Adam C. Losey
1420 Edgewater Drive
Orlando, Florida 32804
Arizona State Bar No. 033438
Primary: alosey@losey.law
Secondary: docketing@losey.law
Telephone: (407) 906-1605

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CRYSTAL AIRCRUISES, LLC, a Florida Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>MARANA AEROSPACE SOLUTIONS, INC. D/B/A ASCENT AVIATION SERVICES, an Oregon Corporation; DAVID QUERIO; SCOTT BUTLER; and BRET BURNSIDE, individuals,<br><br>Defendants. | No.<br><br>PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiff, CRYSTAL AIRCRUISES, LLC, a Florida limited liability company ("Crystal"), hereby files this this Complaint against Defendants, MARANA AEROSPACE SOLUTIONS, INC. D/B/A ASCENT AVIATION SERVICES, an Oregon Corporation ("Ascent"), and individuals DAVID QUERIO ("Querio"), SCOTT BUTLER ("Butler"), and BRET BURNSIDE ("Burnside") (collectively, "Defendants"), and in support thereof states as follows:

# INTRODUCTION

1. Crystal is the owner and operator of an aircraft that was serviced by Ascent, an aircraft maintenance and repair company that markets itself as a "one stop shop" of "outstanding reliability." However, as set forth below, Crystal was forced to make not one but multiple stops at this particular shop for repair and maintenance. Ascent was hardly outstanding, or even reliable, and repeatedly failed to make proper repairs to Crystal's aircraft, despite repeatedly certifying that such repairs had been done correctly and completely.

2. Accordingly, this is a three-count action for (i) fraud, (ii) gross negligence, and (iii) negligence against Ascent and its officers, and Crystal seeks monetary damages against Ascent and individuals at Ascent associated with the losses it sustained in having to repeatedly ground its airplane, refund passengers for delayed flights, and find a substitute aircraft for scheduled flights.

# PARTIES

3. Crystal is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Miami-Dade County, Florida.

4. Ascent is a corporation organized under the laws of the State of Oregon, with its principal place of business in Pima County, Arizona.

5. Querio is the President and Chief Executive Officer of Ascent and, upon information and belief, a resident of Pima County, Arizona.

6. Butler is the Chief Commercial Officer of Ascent and, upon information and

belief, a resident of Pima County, Arizona.

7. Burnside is the Vice President of Operations of Ascent and, upon information and belief, a resident of Spokane County, Washington.

**JURISDICTION AND VENUE**

8. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as this is an action for monetary damages in excess of $75,000; Crystal is a Florida company; Ascent's principal place of business is located in Arizona; Querio, and Butler, are Arizona residents; and Burnside is a Washington resident who routinely conducts business in Arizona as an officer of Ascent and who, as explained below, has committed at least one tort in Arizona that resulted in harm in Arizona such that he has sufficient minimum contacts with the state.

9. Venue is proper in this judicial district pursuant to 8 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this judicial district.

**GENERAL ALLEGATIONS**

10. Crystal provides luxury air travel and transportation services using private charter jets that fly passengers to destinations throughout the world including on the Boeing 777-29M(LR) aircraft that is at issue in this dispute.

11. Ascent provides maintenance, repair, and overhaul ("MRO") services to aircraft owners and operators like Crystal. As an MRO provider for the aviation industry, Ascent has the front line responsibility for the safety and airworthiness of the aircraft it

works on and to ensure that FAA and other safety rules and regulations are complied with.

12. Crystal and Ascent entered into the Maintenance Services Agreement, dated April 23, 2019. Under the Agreement, Ascent was to provide MRO services to Crystal. The Agreement reiterated Ascent's legal obligation, as an MRO service provider, to comply with "applicable FAA regulations and standards."

13. On or about June 28, 2021, Ascent technicians attempted to install a fuel line into a fuel tank. However, the technicians were unable to install the fuel line and informed Crystal that neither they nor Ascent's supervisory staff or faculty could determine why the fuel line would not fit in the fuel tank, despite their warranties and assurances of competence to Crystal.

14. After viewing a video showing the failed installation of the fuel line, Crystal advised Ascent's project manager that it was possible the technicians were installing the fuel line upside down and that was why the installation was unsuccessful. In apparent disagreement with Crystal's assessment, Ascent's project manager responded that the fuel line could not simply be turned over to fix the installation problem, as the end connections were different sizes and thus would still not fit in the fuel tank.

15. Crystal then directed Ascent to immediately contact Boeing, the manufacturer of the fuel line, to determine why the fuel line could not be installed. That same day, Boeing confirmed Crystal's initial assessment was correct; the fuel line would not fit in the fuel tank because Ascent attempted to install it upside down.

16. On or about July 6, 2021, Ascent improperly serviced the aircraft and caused

a fuel leak from the left tank into the center tank, forcing the opening of the tanks at issue and complete resealing. Ascent personnel then signed and certified that these repairs were correctly completed. *See* **Exhibit A**, at 1-2.

17. On or about July 7, 2021, there was another fuel leak, resulting from yet another maintenance failure by Ascent and its technicians, at which point there was fuel leaking into the center tank. As of this date there were multiple loose fuel lines associated with Ascent's faulty fuel line install, as well as installation damage to an "O" ring. Yet again, Ascent personnel then signed and certified that repairs addressing these issues were correctly completed. *See* Exhibit A, at 3, 5.

18. On or about July 9, 2021, Ascent was again attempting to repair the aircraft and caused a third internal fuel leak into the center tank and damaged an "O" ring. Although the aircraft had not been correctly repaired and was not flight worthy, Ascent personnel again certified that repairs addressing these issues were correctly completed.

19. On or about July 10, 2021, the night before a major scheduled departure, there was yet another internal fuel leak into the center tank, and the same line that was improperly installed and repeatedly improperly repaired had yet another "O" ring failure and required a delay of a scheduled departure on July 11, 2021. Ascent personnel again certified that repairs addressing these issues were correctly completed.

20. On or about July 11, 2021, the Boeing 777-29M(LR) aircraft was scheduled to be used for a private flight. During preflight checks and after takeoff, the pilot discovered that the aircraft was not airworthy due to a fuel imbalance between wings as

5

well as numerous error and maintenance messages. Crystal only discovered these many problems after two hours on the ground and one hour of flight, respectively, when its aircraft was flown so that it could be used for the private flight. Ascent personnel again performed work to repair and remediate issues, and signed and certified that repairs addressing these issues were correctly completed. *See* Exhibit A, at 6-11.

21. Finally, on or about July 18, 2021, Ascent and its technicians again failed to correctly service and maintain Crystal's aircraft, leading to yet another failure on a July 25, 2021 flight to San Bernardino from Arizona with a right fuel jettison pump failure that Ascent's own avionics team determined resulted from Ascent's failure to complete maintenance items that Ascent had yet again certified and marked as "completed." *See* Exhibit A, at 16, 18 (where Ascent personnel noted "fuel jettison pumps checks good" on July 23, 2021, but Crystal still reported issues with the "fuel jet pump R after descent" on July 25, 2021).

22. Ultimately, each time Ascent personnel signed and certified that issues had been addressed and repairs were complete in response to Crystal's complaints, such certifications were false. Among the faulty repairs and false certifications were the fuel line repairs where the leaks persisted well after the initial leak on July 6, 2021, despite, for example, Ascent certifying that it had conducted the tests and followed the instructions of Boeing Service Bulletin 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 ("Bulletin") to comply with the Airworthiness Directive ("AD") issued by the FAA for Crystal's aircraft.

23. In reliance upon Ascent's certifications, Crystal actually flew its aircraft, not

knowing that Ascent had failed to fix the aircraft's leaks as required by the Bulletin and AD, which was issued "to prevent fuel exhaustion and subsequent power loss of all engines due to loss of capability to scavenge fuel in the center fuel tank." **Exhibit B**, at 1.

24.     Querio, Butler, and Burnside were aware of the foregoing fraudulent and reckless conduct by Ascent personnel and the multitude of problems experienced by Crystal due to Crystal's reliance on Ascent's false representations. Despite this awareness, however, none of Ascent's officers properly trained, supervised, or vetted the personnel who worked on Crystal's aircraft or ensured the work done on the aircraft was done properly. Accordingly, the officers either "participated [in the tort] or [had] knowledge amounting to acquiescence or [were] guilty of negligence in the management or supervision of the corporate affairs causing or contributing to" Crystal's injury, which are all independent grounds for holding the officers personally liable under Arizona law. *Marlyn Nutraceuticals, Inc. v. Improvita Health Prod.*, 663 F. Supp. 2d 841, 847 (D. Ariz. 2009) (citing *Bischofshausen, Vasbinder, & Luckie v. D.W. Jaquays Min. & Equip. Contractors Co.*, 145 Ariz. 204, 210 (Az. Ct. App. 1985)).

25.     As a result of Ascent's failure to properly repair Crystal's aircraft and false certifications regarding the same, as well as Querio, Butler, and Burnside's failure to act on or rectify this fraudulence or properly train, supervise, vet, or manage their subordinates, Defendants have caused damages to Crystal that have exceeded one million dollars in economic damages, as Crystal was forced to refund at least $760,500.00 in charter funds and spend at least $260,000.00 in replacement aircraft fees, exclusive of other business

costs, lost bookings and other damages, attorneys' fees, and costs.

26. Given the foregoing, Defendants are not free from liability by virtue of the Agreement. First, Article 15(f) of the Agreement states, in relevant part, that Ascent shall not be liable for certain damages "resulting from a delay in performance or failure to perform under this Agreement[,]" and here, the damages do not result in a delay or failure to perform; they result from fraud, bad faith, and reckless or grossly negligent performance. *See supra*. Additionally, while Article 18(f) of the Agreement states, in relevant part, that Ascent shall not be liable "for any special, incidental, indirect, consequential or punitive damages whatsoever[,]" this provision does not limit Defendants' liability because, under Arizona law, "limitation of liability clauses can be held unenforceable if one party acted fraudulently or in bad faith." *Sky Jet AG v. Honeywell Int'l Inc.*, No. CV-17-04709-PHX-GMS, 2018 WL 6620493, at *2 (D. Ariz. Dec. 18, 2018) (citing *Airfreight Inc. Ltd. v. Evergreen Air Center Inc.*, 215 Ariz. 103, 110-111 (Az. Ct. App. 2007) ("As a matter of public policy, a party should not benefit from a bargain it performed in bad faith.")); *see also* A.R.S. § 47-2719(C) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."). In other words, Defendants' fraud and bad faith conduct, which "consist[ed] of inaction[,]" a "lack of diligence and slacking off[,]" and repeatedly false certifications that repairs were made correctly, are independent grounds in Arizona to avoid contractual limitations on damages. *See Sky Jet*, 2018 WL 6620493, at *2; *Airfreight*, 215 Ariz. at 111.

27. The parties are also not required to resolve this dispute by arbitration under

Article 19(b), which provides, in relevant part, that Ascent and Crystal shall submit to binding arbitration for "[a]ll claims, disputes, or controversies *arising under this Agreement* between *the parties*." First, Ascent's officers are not parties to the Agreement; thus, Article 19(b) does not apply to any dispute Crystal has with Querio, Butler, or Burnside, and Crystal did not agree to arbitrate disputes involving the officers' personal liability to Crystal.   Even if the officers were subject to Article 19(b), Defendants' collective fraud and reckless and gross negligence fall well outside the scope of the Agreement and, specifically, the arbitration provision in Article 19(b). Under Arizona law, for a dispute "to be characterized as arising out of or related to the subject matter of the contract, and thus subject to arbitration, it must, at the very least, raise some issue the resolution of which requires a reference to or construction of some portion of the contract itself." *Dusold v. Porta-John Corp.*, 167 Ariz. 358, 362 (Az. Ct. App. 1990) (citation omitted). Here, deciding whether Ascent and its officers are liable for fraud, gross negligence, or negligence does not depend upon an interpretation of or reference to the Agreement. *See also id.* (citing *Armada Coal Export, Inc. v. Interbulk, Ltd.*, 726 F.2d 1566, 1568 (11th Cir. 1984) ("The relationship between the dispute and the contract is not satisfied simply because the dispute would not have arisen absent the existence of a contract between the parties."). Therefore, this action is not subject to arbitration.

WHEREFORE,  Crystal prays for an order awarding it (a) actual damages; (b) Crystal's reasonable attorneys' fees and other litigation costs; and (c) such additional relief that is deemed fair and equitable.

**COUNT I: FRAUD**

28. Crystal realleges and incorporates the allegations contained in paragraphs 1 through 27 *supra* as if fully set forth herein.

29. Ascent, through its personnel, made representations to Crystal by repeatedly signing and dating certifications about the completeness of the repairs purportedly conducted on Crystal's aircraft.

30. These representations were false because, despite Ascent's certifications that repairs were done properly and completely, the leaks were not repaired. These faulty repairs and false certifications required serial replacements of aircraft parts were made throughout the month of July 2021.

31. These representations were also material because it ultimately affected Crystal's decision to fly its aircraft.

32. Ascent knew, or at minimum reasonably should have known, that the representations made in its certifications were false, as problems with Crystal's aircraft continued throughout the month of July 2021, despite Ascent's alleged repairs. Ascent itself acknowledged that it failed to complete maintenance items that it had previously marked as "completed."

33. Ascent intended for Crystal to rely on its representations, as Ascent continued to sign, date, and certify its repairs were complete and proper.

34. As evidenced by Crystal's decision to fly its aircraft, Crystal did not know Ascent's representations were false and only flew its aircraft because it reasonably believed

the representations made in Ascent's certifications were truthful and that subsequently its aircraft was ready and safe for flight.

35. Crystal reasonably relied on the representations made in Ascent's certifications, and had a right to so rely on the representations, in part because both Crystal and Ascent are regulated by the FAA and subject to its regulations.

36. As a result of its fraudulent actions, Ascent has caused damages to Crystal in excess of $1,020,500.00 in economic damages, and Querio, Butler, and Burnside have also contributed to this injury. The officers not only knew about Ascent's fraud and did nothing about it, but they also negligently managed or supervised the Ascent personnel that worked on Crystal's aircraft.

WHEREFORE, Crystal prays for an order awarding it (a) actual damages; (b) Crystal's reasonable attorneys' fees and other litigation costs; and (c) such additional relief that is deemed fair and equitable.

### COUNT II: GROSS NEGLIGENCE

37. Crystal realleges and incorporates the allegations contained in paragraphs 1 through 27 *supra* as if fully set forth herein.

38. Ascent, as a service provider, had a duty to repair Crystal's aircraft in good faith and according to certain standards, including FAA regulations and, in particular, those regulations related to air safety. Similarly, Querio, Butler, and Burnside, as Ascent's officers, had a duty to ensure that Ascent personnel could competently repair Crystal's aircraft in order to meet these same standards.

39. Both Ascent and the Ascent officers breached their respective duties and did so in a manner that was reckless, amounted to a lack of diligence, and compromised aircraft crew safety. Specifically, Ascent breached its duty when it failed to properly and completely repair Crystal's aircraft but repeatedly and falsely certified that it had. Likewise, the officers breached their duty when they failed to properly train, supervise, vet, or manage the personnel that worked on Crystal's aircraft and allowed such personnel to issue false certifications to the point where, because of such certifications, Crystal flew a defective aircraft overseas that did not comply with FAA regulations.

40. Ultimately, Ascent and its officers' breaches of duty have caused injury to Crystal because, but for their false certifications and actions, Crystal would not been required to refund at least $760,500.00 in charter funds, spend at least $260,000.00 in replacement aircraft fees, or sustain over $1,020,500.00 in economic damages.

WHEREFORE, Crystal prays for an order awarding it (a) actual damages; (b) Crystal's reasonable attorneys' fees and other litigation costs; and (c) such additional relief that is deemed fair and equitable.

## COUNT III: NEGLIGENCE

41. Crystal realleges and incorporates the allegations contained in paragraphs 1 through 27 *supra* as if fully set forth herein.

42. Even if Ascent and its officers' conduct did not arise to the level of *gross* negligence, both Ascent and its officers were nevertheless negligent in servicing Crystal's aircraft and training, supervising, vetting, or managing Ascent personnel, respectively.

12

43. Ascent had a duty to properly and completely repair Crystal's aircraft to meet its legal obligations as an MRO service provider. Likewise, Querio, Butler, and Burnside also had a duty to ensure that Ascent personnel could competently repair Crystal's aircraft in order to meet the same legal obligations.

44. Ascent breached its duty of care when it failed to properly and completely repair Crystal's aircraft but fraudulently represented that it had repaired the aircraft. Similarly, Ascent's officers breached their duty of care when it neglected to ensure that Ascent's purported repairs were done properly and completely, particularly when said officers were aware of Ascent's fraud and did nothing to resolve the issue.

45. As a result of Ascent and its officers' respective breaches, Crystal has lost over $1,020,500.00 in economic damages.

WHEREFORE, Crystal prays for an order awarding it (a) actual damages; (b) Crystal's reasonable attorneys' fees and other litigation costs; and (c) such additional relief that is deemed fair and equitable.

**JURY TRIAL DEMANDED**

Crystal hereby demands a jury trial on all issues so triable.

Dated: December 10, 2021

_____
**Adam C. Losey, Esq.**
State Bar No. 033438
Primary: alosey@losey.law
Secondary: docketing@losey.law
**Losey PLLC**
1420 Edgewater Dr.
Orlando, FL 32804
Telephone: (407) 906-1605
*Attorney for Plaintiff*